IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ELIJAH THOMAS,           )
#251765,                 )
                         )
        Plaintiff,       )
                         )
    v.                   )        CASE NO. 2:13-CV-597-WHA
                         )              (WO)
                         )
J. C. GILES, et al.,     )
                         )
        Defendants.      )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Elijah

Thomas ("Thomas"), a former state inmate, transferred to this court by the United States

District Court for the Southern District of Alabama on claims lodged against Warden J. C.

Giles and Officer Robert Reynolds.  In this complaint, Thomas alleges that during his

confinement at the Ventress Correctional Facility ("Ventress") the defendants acted with

deliberate indifference when they forced him to "go on a work squad" despite his medical

history and denied him access to medical treatment for an injury suffered while on the work

squad.  *Doc. No. 1* at 4-5.  Thomas seeks a declaratory judgment and monetary damages

for the alleged violations of his constitutional rights.

The defendants filed a special report, supplemental special reports and relevant

evidentiary materials, including affidavits and certified copies of Thomas' medical records,

1

addressing the claims presented in the complaint.  In these filings, the defendants deny they acted with deliberate indifference to Thomas' safety or medical needs.  Specifically, the defendants deny any knowledge of a condition which prevented Thomas from assignment to a work squad and further maintain that he received medical treatment for his injury throughout his incarceration at Ventress.

Upon receipt of the defendants' special reports, the court issued an order directing Thomas to file a response to the reports, including affidavits, sworn statements or other evidentiary materials.  *Order of January 10, 2014 - Doc. No. 24*.  This order advised Thomas that unless "**sufficient legal cause**" is shown within fifteen days of entry of this order "**why such action should not be undertaken**, the court may at any time [after expiration of the time for his filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law." *Id*. at 2-3. Thomas responded to the defendants' reports on February 26, 2014. *Plaintiff's Response - Doc. No. 25*.

Pursuant to the order , the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint

and the plaintiff's response to the reports, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590,

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (the moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a

plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective

beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . .

[including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Liberty Lobby*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Liberty Lobby*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence

before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Thomas has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary judgment in favor of the defendants.

### III.  ABSOLUTE IMMUNITY

To the extent Thomas sues the defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than

name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

## IV. DISCUSSION

### A. Relevant Facts

Thomas became a state inmate in 2007. Sometime prior to his incarceration and while in the free world, Thomas injured a ligament in his right hand and underwent surgery at the University of South Alabama Medical Center. After his incarceration in the state prison system, Thomas suffered a collapsed lung in 2007 and 2008 for which he received treatment to alleviate this condition. The medical records demonstrate that Thomas had "no problems [with] his lungs since 2008." *Defendants' Exh. A to the Special Report - Doc. No. 17-1* at 29. While incarcerated, Thomas also received medication for treatment of high blood pressure.

In September of 2013, several years after both the injury to his right hand and lung issue, correctional officials assigned Thomas to work on the Barbour County Highway Department Squad.  At the time of this assignment, Thomas had no documented medical restriction preventing his assignment to this work squad.  On September 23, 2013, Williams checked out with the highway squad for his work assignment.  While working under a bridge, "Plaintiff was moving a rock [when] another rock rolled onto Plaintiff right hand trapping his hand between two bolders (sic)[.] . . . His hand was smashed, and busted open and broken."  *Complaint Doc. No. 1 at 4.*

Upon his return to Ventress, defendant Reynolds immediately referred Thomas to the health care unit for evaluation and treatment of his injury.  The attending nurse examined Thomas, noted a "deep laceration" to his right pinky finger and consulted with the prison physician, Dr. John Peasant, regarding the appropriate course of treatment. *Defendants' Exh. A to the Special Report - Doc. No. 17-1* at 1.  Dr. Peasant advised that Thomas should be given a tetanus shot, which the nurse administered, and transported to the emergency room for evaluation and any further necessary treatment.  *Id.*  Based on this instruction, correctional officials transported Thomas to the Troy Medical Center Emergency Department.

Emergency room medical personnel examined Thomas and diagnosed him with a laceration and fracture of his finger.  The attending emergency room physician provided wound care, applied sutures to close the laceration and placed a padded splint on Thomas' injured finger.  *Id.* at 10.  After rendering treatment to Thomas, the attending physician

noted that Thomas suffered no "life or limb threatening" injuries, determined that his condition was stable and released him for transport back to Ventress.  He recommended that Thomas receive Tylenol and Motrin to alleviate pain and/or swelling and advised that Thomas' sutures should be removed in seven days.  *Id*. at 46.

When Thomas returned to Ventress, medical personnel prescribed Tylenol and Motrin four times per day as needed for thirty days to alleviate pain and swelling, and Keflex, an antibiotic, to prevent infection three times per day for seven days.  *Id*. at 24. The medical records indicate that health care personnel provided these medications to Thomas as prescribed.  *Id*. at 44, 47.  The nurse scheduled Thomas a follow-up appointment with Dr. Peasant on September 26, 2011 for evaluation of the injury to his finger, *id*. at 13, and Dr. Peasant conducted the examination as scheduled, at which time he ordered an x-ray of Thomas' finger.  *Id*. at 3.  The x-ray showed "a fracture of the distal margin of the right 5th distal phalanx with a slight dorsal displacement of the distal fracture fragment and associated soft tissue swelling.  The remainder of the right hand appears intact."  *Id*.  Dr. Peasant issued a special needs profile that plaintiff report to treatment call every day for a change of his bandage "until healed.  [F]ollow-up on 10-6-11."  *Id*. at 51.

Dr. Peasant examined Thomas on October 6, 2011 and October 20, 2011.  During the October 20, 2011, Thomas requested use of his injured finger in lifting weights and doing pushups.  *Id*. at 30.  Dr. Peasant observed that "5th digit laceration healed - skin tight [with] scar . . . [and ordered] no wt. lifting/no push up using [right] 5th digit.  X-ray 5th digit 11-7-11.  [Follow-up] 2 days [after x-ray]."  *Id*.  Thomas underwent the x-ray as ordered

by Dr. Peasant and appeared for his follow-up appointment on November 9, 2011.  At this time, Dr. Peasant observed that Thomas' fracture was "healing" in an appropriate and timely manner and advised Thomas to follow-up with health care personnel as needed.  *Id*. at 29.  Dr. Peasant also noted that Thomas had suffered "no problems [with] his lungs since 2008" and therefore assigned Thomas an "HC-1" medical code, a code which identifies the inmate as having no health related restrictions.  *Id*.  Thomas was transferred from Ventress to the Camden Work Release Center on December 2, 2011.

### B. Claims for Relief

Thomas alleges that Warden Giles and Officer Reynolds showed "deliberate indifference to [his] medical needs because [they] were aware of Plaintiff['s] pain and suffering and fail[ed] to act to alleviate [it]."  *Complaint - Doc. No. 1* at 4-5.  Thomas also argues that the defendants acted with deliberate indifference to his safety by assigning him to a work squad knowing he suffered health issues several years prior to issuing the work squad assignment.  *Id*. at 5.

1.  <u>Deliberate Indifference to Injury</u>.  Thomas asserts that defendants Giles and Reynolds had knowledge of his injury and failed to provide him treatment to alleviate his pain and suffering.  It appears that Thomas believes the defendants acted with deliberate indifference because they did not intervene on his behalf requiring that he receive a different mode of medical care for the injury to his finger than that prescribed by attending medical personnel at Ventress.  These assertions entitle Thomas to no relief.

> The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Insofar as Thomas seeks relief from the defendants for the treatment provided by health care personnel, assuming these defendants exerted some authority over those persons responsible for the provision of medical treatment at Ventress, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials

are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for medical treatment provided to Thomas could attach to defendants Giles and Reynolds only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Thomas has presented no evidence to create a genuine issue of disputed fact with respect this claim of deliberate indifference by the defendants. There is nothing before the court which indicates that Warden Giles or Officer Reynolds personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Thomas; rather, it is undisputed that they did not participate in the provision of treatment to Thomas. The evidentiary materials before the court demonstrate that medical personnel made all

decisions relative to the course of treatment provided to Thomas and that they provided treatment to Thomas in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, defendants Giles and Reynolds are liable for decisions of the medical staff only if their actions bear a causal relationship to the purported violation of Thomas' constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these defendants, Thomas must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the correctional defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so[,]" or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Giles and Reynolds] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Thomas has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Giles and Reynolds directed medical personnel to act unlawfully or knew that they would act unlawfully and failed to stop such action.  In addition, Thomas has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which the correctional defendants failed to take corrective action; instead, the medical records

indicate that Thomas was immediately referred to medical personnel for treatment upon his return from the work site to Ventress, had continuous access to medical personnel thereafter while at Ventress and received treatment for his condition throughout his incarceration at Ventress.  Finally, the evidentiary materials submitted by the defendants demonstrate that the medical treatment provided to Thomas did not occur pursuant to a policy enacted by Giles and Reynolds.  Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted. *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Summary judgment is therefore due to be granted in favor of the defendants on Thomas' claim that they acted with deliberate indifference to his injury.

Even assuming *arguendo* a causal connection, the medical records before the court establish that health care personnel did not act with deliberate indifference to Thomas' medical needs.  To prevail on a claim concerning an alleged denial of medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).[2]  Specifically, medical personnel may not subject an inmate to "acts or

---

[2]Thomas was a convicted inmate during the period of time relevant to this complaint.  Thus, this case is not affected by the decision of the United States Supreme Court in *Kingsley v. Hendrickson*, --- U.S. ---, ---, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (holding that "objectively reasonable" standard of review is applicable to pretrial detainee's excessive force claim brought under the Fourteenth Amendment).

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice - negligence by a physician [or nurse] - is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show:  (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When

seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Goebert v. Lee Cty.*, 510 F.3d 1312, 1325 (11th Cir. 2007) (quoting *Hill*, 40 F.3d at 1187, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). In addition, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic

techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).  The law is well settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)).

The allegations presented by Thomas fail to establish deliberate indifference.  The evidence before the court demonstrates that when Thomas returned to Ventress from the work site correctional officials referred him to the facility's medical personnel for treatment of his injury.  After evaluating the injury to Thomas' finger, medical personnel ordered that Thomas be transported to a free world hospital for evaluation and treatment. Correctional officers complied with this order and transported Thomas to the Troy Medical Center for treatment.  Upon return from the Troy Medical Center, Thomas had continuous access to medical treatment from health care personnel at Ventress and received treatment

from the facility's medical staff in accordance with their professional judgment.  Based on well settled law cited herein, the court concludes that the treatment provided to Thomas for his injured finger did not constitute deliberate indifference.  Thomas' self-serving statement alleging deliberate indifference does not create a question of fact in the face of contradictory, contemporaneously created medical records.  *Whitehead*, 403 F. App'x at 403 (11th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253-1254 (11th Cir. 2013) (same).  In addition, Thomas has failed to present any evidence which indicates defendants Giles and Reynolds knew that the manner in which medical personnel treated his finger created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants or health care personnel acted with deliberate indifference to a serious medical need exhibited by Thomas.  Consequently, summary judgment is likewise due to be granted in favor of the defendants for this reason.

2. <u>Deliberate Indifference to Safety</u>.  Thomas argues that the defendants acted with deliberate indifference to his safety by assigning him to a work squad in September of 2011 despite their knowledge of his past medical issues, i.e., an injury to a ligament in his hand that occurred in 1999-2000 prior to his incarceration in 2007 and instances of a collapsed

lung while at Ventress in 2007 and 2008.   *Plaintiff's Response - Doc. No. 25* at 2-4. Thomas, however, concedes that he received treatment for these medical issues at the time they occurred which subsequently alleviated each respective issue.   *Id.*   At the time of his assignment to the highway work squad, no medical profile had been issued to Thomas which prohibited such assignment.   Moreover, the medical records indicate that in September of 2011 neither of these prior conditions limited Thomas' ability to work on a highway squad.

The defendants adamantly deny they acted with deliberate indifference to Thomas' safety.   Specifically, the defendants assert that Thomas' prison files contained no documentation placing any limitation on his ability to work at the time the job board assigned him to the highway squad.   *Defendants' Exh. C to the Special Report (Aff. of J. C. Giles) - Doc. No. 17-3* at 2 ("There was nothing in Inmate Thomas' file to state he was unable to go out and work on a squad.");   *Defendants' Exh. 1 to the Supplemental Special Report (Aff. of Robert H. Reynolds) - Doc. No. 23-1* at 1 ("Inmate Elijah Thomas #251765 was not under any medical hold and did not have any documented medical issues that would have kept him from being assigned or working on an outside squad.");   *Defendants' Exh. 2 to the Supplemental Special Report (Aff. of J. C. Giles) - Doc. No. 23-2* at 1 (same). The defendants further maintain that they had no knowledge that the assignment of Thomas to the work squad "was unsafe, dangerous and/or hazardous" to his safety.   *Defendants' Exh. AA to the Supplemental Special Report (Aff. of J. C. Giles) - Doc. No. 21-1* at 1;

*Defendants' Exh. BB to the Supplemental Special Report (Aff. of Robert H. Reynolds) -*
*Doc. No. 21-2 at 1.*

Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh*, 268 F.3d at 1028.

The law is well settled that both objective and subjective elements are necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . ***[A]n official's failure to alleviate a significant risk that he should have perceived but***

***did not, while no cause for commendation, cannot under our cases be condemned as the***

***infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v.*

*Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that

the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v.*

*Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve

more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy

and wantonness, not inadvertence or error in good faith, that characterize the conduct

prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in

connection with establishing conditions of confinement, supplying medical needs, or

restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312,

319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

be a strong likelihood, rather than a mere possibility before a [state official's] failure to act

can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.

1990) (citations and internal quotations omitted). Thus, "[m]erely negligent failure to

protect an inmate . . . does not justify liability under section 1983." *Id.*

Pursuant to the aforementioned criteria, Thomas is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference to safety claim against defendants Giles and Reynolds.  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries).

Thomas fails to demonstrate deliberate indifference or reckless disregard by the defendants to his safety with respect to his placement on a highway work squad in September of 2011.  Specifically, he does not identify any particular issue of which the defendants were aware from which an inference could be drawn that a substantial risk of serious harm existed.  The record is also devoid of any evidence showing that the defendants drew the requisite inference.  Consequently, summary judgment is due to be granted in favor of the defendants on the plaintiff's claim alleging deliberate indifference arising from his assignment to a highway work squad.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 6, 2016 the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th  Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 20th day of May, 2016.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE